IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLASS ARTISTRY            :      CIVIL ACTION
ARCHITECTURAL GLASS &     :
METAL, LLC                :
                          :
        v.                :
                          :
WESTERN SURETY COMPANY     :      NO. 09-2244


MEMORANDUM

McLaughlin, J.                              January 27, 2010


        This is a suit by a subcontractor against a surety to
recover amounts due for material and labor provided for the
construction of a building.  The subcontractor, Glass Artistry
Architectural Glass & Metal, LLC ("Glass Artistry"), has moved
for summary judgment.  The surety, Western Surety Company
("Western"), opposes summary judgment and argues that Glass
Artistry is not entitled to the amounts it claims until the
general contractor receives full payment from the building's
owner.  Western asserts that the building's owner has withheld
full payment to the general contractor on the ground that work on
the building, including work done by Glass Artistry, was
defective.  Western has filed a motion to stay the case pending
the outcome of a dispute resolution process between the general
contractor and the owner of the building.

For the reasons that follow, the Court will deny Glass Artistry's motion for summary judgment and grant Western's motion for a stay.

I.   <u>FACTUAL BACKGROUND</u>

This suit concerns the construction of the West Whiteland Township Municipal Building.  The owner of the building, West Whiteland Township ("West Whiteland"), contracted for the construction of the exterior of the building with Magnum, Inc. ("Magnum"), the general contractor.  Magnum, in turn, entered into a subcontract with the plaintiff, Glass Artistry, to provide labor, material, and equipment to complete certain work on the project, principally glass and glazing for the building's doors and windows.  As part of its contract with West Whiteland, Magnum was required to obtain performance and payment bonds, which would, among other things, guarantee payment to any subcontractors providing labor and materials to the project. Magnum obtained these bonds from the defendant Western.  Compl. and Answ. ¶¶ 5-6.

A.   <u>The Terms of the Surety Bond</u>

The surety bond at issue here states that Magnum and Western jointly and severally bind themselves to pay for labor, materials, and equipment furnished for the performance of the

contract between Magnum and West Whiteland to build the township building.  The bond states that the contract between Magnum and West Whiteland, including all contract documents and changes thereto, is incorporated into the bond by reference.  Bond, Ex. A. to Pl. S.J. Br., Art. 1, Art. 15.2.  The bond provides that the obligations owed to claimants under the bond are ended if Magnum "promptly makes payment, directly or indirectly, for all sums due."  Bond Art. 3.  A "claimant" is defined to include an individual or entity having a direct contract with Magnum to furnish labor, materials, or equipment for use in the performance of the contract.  Bond Art. 15.1

The bond states that Western will have no obligation to any claimant until the claimant has given notice to Western of the amount of its claims.  Once a claimant gives notice, the bond obligates Western to send the claimant an answer within 45 days, stating the amount that is undisputed and the basis for challenging any amounts that are disputed.  The bond then obligates Western to pay any undisputed amounts.  The bond also provides that any suit by a claimant under the bond must be commenced within one year of providing notice.  Art. 4, 6, 11.

B    Glass Artistry's Evidence Concerning an Oral Contract
     Between It and Magnum

The subcontract between Magnum and Glass Artistry was entered into in May or June 2006.  The parties disagree as to the

specifics of this contract.  Glass Artistry has submitted the affidavit of its president, Jerome Martucci, who states that Glass Artistry entered into an oral contract with Magnum to perform work on the building and that the total approved scope of work under this contract was $934,743.  Martucci avers that Glass Artistry completed all its work on the project but has received only $756,477 from Magnum, leaving an unpaid amount of $178,266. Martucci states that Glass Artistry never received any notice from Magnum stating that West Whiteland was withholding money from Magnum because of defective work by Glass Artistry. Martucci Aff., Ex. B to Pl. S.J. Br., at ¶¶ 2-8.

Glass Artistry has also proffered an application and certificate for payment submitted by it to West Whiteland for work done through April 31 [sic], 2008.  Ex. C to Pl. S.J. Br. This application states that Glass Artistry's "Original Contract Sum" was $880,000, but that this was increased by change orders to a "Contract Sum to Date" of $934,743.  The application states that 10% of this amount or $93,474.30 is to be withheld as retainage,[1] leaving $841,269.70 as the total earned and payable to Glass Artistry.  The application requests payment of $84,832.70, which combined with the amounts already requested,

---

[1]    "Retainage" is a percentage of the payment due under a construction contract or subcontract that is withheld until the work is finished or substantially completed.  3 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 8:18 (West Jan. 2010).

would equal the $841,269.70 total that the application states is earned and payable to Glass Artistry. The application contains the certification of the project's architect that the work in the application has been completed and that its quality is in accordance with the contract documents and that Glass Artistry is entitled to payment.

Glass Artistry has also proffered a similar application and certificate of payment by Magnum to West Whiteland for the period through May 30, 2008.[2] Ex. D to Pl. S.J. Br. Like the Glass Artistry application, Magnum's application requests a payment which, combined with the amounts already requested by Magnum, would equal the total contract amount, less 10% retainage. The schedule attached to this certification shows work on doors and windows which would have been within Glass Artistry's scope of work. The application contains the certification of the architect that all of the work in the application has been performed, that its quality is in accordance with the contract standards, and that the application should be paid. Glass Artistry has also proffered a payment voucher showing that the amount requested in this application was paid by West Whiteland to Magnum. Ex. D to Pl. S.J. Br.

---

[2] The typed date on Magnum's application and certificate states that it covers work through May 30, 2006. The handwritten dates on the document next to the signatures of Magnum's representative, the architect, and the notary all show the year to be 2008.

C    Western's Evidence Concerning a Written Contract
     Between Glass Artistry and Magnum

Western disputes that the subcontract between Magnum and Glass Artistry was an oral contract. It attaches to its opposition to summary judgment a written subcontract between Magnum and Glass Artistry for the work on the West Whiteland Municipal Building dated June 24, 2006. Subcontract, Ex. 1.A. to Def. S.J. Opp. The subcontract was never signed by Glass Artistry, but Western contends that it nonetheless became binding. Western has submitted the affidavit of Magnum's project manager, Raymond Rongione, who states that, in July 2006, he provided Glass Artistry with a copy of the proposed subcontract, along with a schedule of prices, a computer disk of prevailing wage rates, the architectural drawings for the project, and a copy of the contract between Magnum and West Whiteland. Rongione states that Glass Artistry started work on the building in February 2007 and at no time prior or after that time did it reject any terms of the proposed subcontract or return the subcontract to Magnum as unacceptable. Rongione Aff., Ex. 1 to Def. S.J. Opp., at ¶¶ 2-7.

The written subcontract states that Magnum agrees to pay Glass Artistry $880,000 for performance of its work, "subject to additions and deductions for changes as may be agreed upon" in writing. It provides that partial payments will be made for work completed, approved, and paid for by the owner and that 10%

"retainage will be withheld from each payment and for 90 days after final acceptance by the Owner." The subcontract makes payment to Magnum from West Whiteland a "condition precedent" to Magnum's obligation to Glass Artistry. Subcontract Art. 4.

Under the subcontract, Magnum's payments to Glass Artistry are to be made upon West Whiteland's payment of Magnum's contractors certificates "so that at all times [Glass Artistry's] total payments shall be as large in proportion to the value of the work done by [Glass Artistry] as the total amount certified to [Magnum] is to the value of the work done by [Magnum]." Magnum also agrees in the subcontract to pay Glass Artistry "on demand" for "work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue." Subcontract Art. 5(f), 5(h).

The written subcontract expressly incorporates the general construction contract between West Whiteland and Magnum, including any supplements, addenda, and architectural drawings. It also provides that both Magnum and Glass Artistry agree to be bound by the terms of the West Whiteland/Magnum contract "as far as applicable to this subcontract" and that Glass Artistry agrees to assume toward Magnum all of the responsibilities that Magnum assumes to West Whiteland under the terms of the general contract. Glass Artistry also agrees to "indemnify and hold harmless" Magnum from claims and damages, including attorneys'

fees, to the extent caused by Glass Artistry's negligence. Subcontract Art. 1, 5(a), 5(d)(1).

The subcontract does not contain an arbitration clause, but it allows Glass Artistry, in certain situations, to "be present and to submit evidence" in arbitration that may take place under the contract between Magnum and West Whiteland. The subcontract also states that Magnum and Glass Artistry agree that "[i]n the matter of arbitration their rights and obligations and all procedure[s] shall be analogous to those set forth in this contract." Subcontract Art. 5(j), 5(k).

D    Western's Evidence Concerning Notice to Glass Artistry of Potential Claims by West Whiteland

As mentioned above, the affidavit of Glass Artistry's president, Jerome Martucci, states that Glass Artistry never received any notice from Magnum that West Whiteland was withholding money from Magnum because of Glass Artistry's defective work. Western disputes this and attaches to its opposition copies of notices sent to Glass Artistry from Magnum complaining of defective work.

Faxed letters sent to Glass Artistry from Magnum project manager Raymond Rongione on January 22, February 1, February 12, February 19, and March 6, 2008, all complain that Glass Artistry has not satisfactorily completed its work, noting

inadequate manpower and incomplete or defective work.  The
February 12 and 19 and March 6 notices all warn that Glass
Artistry will be responsible "for any negative impact" to Magnum.
Ex. D-H to Def. S.J. Opp.; Rongione Aff. at ¶¶ 11(a)-(e).

Another faxed letter from Rongione to Glass Artistry
dated March 20, 2008, again complains of understaffing and
failure to complete work and states that "as of this date all
payments will be withheld in anticipation of pending liquidated
damages" that may be owed to West Whiteland.  A subsequent email
from Rongione to Mark Whiteman of Glass Artistry, dated April 21,
2008, responding to Whiteman's inquiry as to why Glass Artistry
was not getting paid, states:  "You are not getting paid because
the owner has not paid us for several months because of potential
liquidated damages -- you were warned repeatedly that this was
going to happen . . ."  Ex. I-J to Def. S.J. Opp.; Rongione Aff.
at ¶¶ 11(f)-(g).


E.    <u>Magnum's Termination and Subsequent Dispute Resolution</u>

On June 23, 2008, West Whiteland asserted a claim
against Magnum in the amount of $969,000 for liquidated damages
under the contract for failure to timely complete the project.
On June 24, 2008, Magnum asserted a claim in the amount of
$775,900 against West Whiteland, asserting that it experienced
delay in completing the project from change orders issued by West

Whiteland and its agents. As required by their contract, both Magnum and West Whiteland submitted their claims to the project architect. Ex. T, U to Def. Mot. to Stay.

On September 3, 2008, West Whiteland sent Magnum a notice of intent to terminate it as general contractor. The notice enclosed a report of the building architect, Cee Jay Frederick Associates, certifying that sufficient cause existed for West Whiteland to terminate its contract, citing among other reasons, that Magnum failed to provide adequate manpower and failed to remedy or replace defective work, including defects related to water infiltration to the building. In his affidavit, Mr. Rongione, Magnum's project manager, states that he called Glass Artistry's project manager on or around September 4, 2008, to inform him of the notice and of Magnum's belief that Glass Artistry played a role in the deficiencies identified by West Whiteland. Ex. J to Def. Mot. to Stay; Rongione Aff. at ¶ 13.

On September 4, 2008, Glass Artistry sent a letter to both Magnum and Western stating that it would be making a claim against Western's payment bond for $176,066, representing the difference between the $756,477 that it had been paid on its subcontract and its total approved and completed scope of work amounting to $934,743. Ex. 2 to Def. S.J. Opp.

On October 14, 2008, West Whiteland formally terminated Magnum as general contractor. After discussions with Magnum,

however, West Whiteland rescinded that termination on October 30, 2008, to allow Magnum to complete the allegedly unfinished or defective work. At the same time, Magnum and West Whiteland entered a tolling agreement on their potential claims against each other. Ex. M, N to Def. Mot. to Stay.

Magnum and Glass Artistry then worked to complete the project. In December of 2008, an inspector for the architect issued a report on water infiltration at the building, stating that some of the leaks were caused by windows installed by Glass Artistry. Ex. H to Def. Mot. to Stay.

On June 18, 2009, West Whiteland's counsel sent a letter to Magnum and Western giving notice that it intended to reinstate its termination of Magnum's contract and intended to make a claim on Western's surety bond for Magnum's failure to perform. A follow-up letter from West Whiteland's counsel refers, among other issues, to "significant Air and Water Infiltration issues that remain outstanding." On August 17, 2009, counsel for Magnum sent a letter to Glass Artistry's counsel, stating that West Whiteland had refused to release the contract amount held as retainage and had asserted that Magnum was responsible for liquidated damages and back charges, and stating that the letter constituted notice that Magnum reserved its right to seek contribution or indemnity from Glass Artistry. Ex. I, O, P to Def. Mot. to Stay.

After giving Magnum notice of termination, West Whiteland hired a water infiltration expert, Wiss, Janney, Elstner Associates, Inc. ("WJE") to conduct an investigation of the leaks. WJE conducted testing in July 2009, to which Glass Artistry was invited to participate, and which Glass Artistry's project manager attended. WJE conducted a second round of testing in October 2009.

Western has stated (and Glass Artistry has not disputed) that Magnum and West Whiteland are currently beginning non-binding, contractually-required mediation over their claims. Western states that Magnum has also filed a writ of summons in the Court of Common Pleas of Chester County, and if mediation is unsuccessful, will bring suit against West Whiteland in that forum, as allowed under the Magnum-West Whiteland contract. Def. Mot. for Stay at 2-3.

II. ANALYSIS

    A.   Glass Artistry's Motion for Summary Judgment

The parties have not disputed that the surety bond, issued to a Pennsylvania corporation for work on a building in Pennsylvania, is to be interpreted under Pennsylvania law. Pennsylvania law considers a surety bond to be a contract whose terms determine the surety's rights and liabilities. Beckwith Mach. Co. v. Nat'l Union Fire Ins. Co., 890 A.2d 403, 406 (Pa.

Super. Ct. 2005).  The liability of a surety is co-extensive with that of its principal, and a surety is therefore bound to perform whatever may be legally required of the principal.  N. Am. Specialty Ins. Co. v. Chicester Sch. Dist., 158 F. Supp. 2d 468, 471 (E.D. Pa. 2001).  Conversely, a surety's liability is no greater than that of the surety's principal, and a surety may assert any defense which would be available to his principal. Sloan & Co. v. Liberty Mutual Ins. Co., 2008 WL 3832519 (E.D. Pa. Aug. 15, 2008);  Exton Drive-In, Inc. v. Home Indem. Co., 261 A.2d 319, 325 (Pa. 1969).

The bond provides that Western is jointly and severally liable with Magnum for all amounts due to Glass Artistry for labor and materials used in furtherance of Magnum's contract with West Whiteland.  This obligation is "null and void" if Magnum has made payment for "all sums due" to Glass Artistry.  Glass Artistry's right to recover under the bond turns, therefore, on whether the money that it seeks is a sum currently "due" under its subcontract with Magnum.[3]

---

[3]    The terms of the bond require that, for Western to have any obligation to a claimant, the claimant must provide Western with notice of its claim.  Here, the parties do not dispute that Glass Artistry provided Western with notice.  Western states, however, that after receiving the notice, it requested further information from Glass Artistry concerning its claim, but that Glass Artistry failed to provide it.  Western asserts that, because of this lack of information, it was unable to complete its investigation of Glass Artistry's claim, which it states is ongoing.

Glass Artistry argues that it is entitled to summary judgment because there is no genuine issue of material fact that the amount it seeks is due and owing under its subcontract with Magnum and therefore recoverable under the bond. Glass Artistry argues that it has established that: 1) the total scope of work under its subcontract was $934,743, but it has been paid only $756,477; 2) that it completed all its work under the subcontract and that this work was certified by the project architect to be both complete and of satisfactory quality; and 3) that Magnum did not timely notify it either that its work was deficient or that West Whiteland was withholding payment from Magnum because of deficiencies within Glass Artistry's scope of work. Western counters that there are material issues of disputed facts with respect to each of these elements of Glass Artistry's argument.

The Court agrees with Western that the factual record, as so far developed, shows disputed issues of material fact that prevent summary judgment at this time.

### 1 Genuine Issues of Material Fact Exist over the Terms of Glass Artistry and Magnum's Subcontract

Glass Artistry has produced evidence that the total scope of work under its subcontract with Magnum was $934,743. The affidavit of Glass Artistry's president states that this amount was the total agreed upon under Glass Artistry and

Magnum's alleged oral contract.  This is supported by Glass Artistry's application and certificate for payment for work done through the end of April 2008, which states that the "Original Contract Sum" of $880,000 has been modified by change orders to a "Contract Sum to Date" of $934,743.  The written subcontract proffered by Western does not contradict this.  Although the scope of work in the written subcontract is $880,000, the contract provides that this amount can be increased by written change orders.  No change orders, however, have been made part of the summary judgment record.

Glass Artistry contends that, if it establishes the dollar amount of its scope of work under the subcontract, then it need not present evidence of any other terms of the subcontract to prevail on its motion for summary judgment.  Glass Artistry has therefore not attempted to establish any other terms of the oral subcontract it alleges between it and Magnum.  Glass Artistry's position, however, is mistaken.  To establish a right to recovery under a contract, a plaintiff may have to establish that there are no unexcused, unfulfilled conditions precedent to the other party's obligation to pay.  See Acme Markets, Inc. v. Federal Armored Exp., Inc., 648 A.2d 1218, 1221 (Pa. Super. 1994) (under Pennsylvania law, a condition precedent is "a condition which must occur before a duty to perform under a contract arises.").

15

Here, the written subcontract produced by Western states that a condition precedent to Glass Artistry being paid by Magnum is Magnum's receiving payment from West Whiteland for Glass Artistry's work.  If this provision were part of Glass Artistry's subcontract, then Glass Artistry would have to establish that this condition had been satisfied before it would be entitled to full payment under the subcontract.

On the record before the Court, there is a genuine issue of fact whether the terms of the written, but unsigned, subcontract, including the condition precedent, became binding upon Glass Artistry and Magnum.  Under Pennsylvania law, subsequent performance by the parties to an unsigned contract "may give rise to a binding contract between them."  <u>Franklin Interiors v. Wall of Fame Management Co.</u>, 511 A.2d 761, 762 (Pa. 1986).  Signatures are not required for a contract to become binding "unless such signing is expressly required by law or by the intent of the parties."  <u>Shovel Transfer & Storage, Inc., v. Pa. Liquor Control Bd.</u>, 739 A.2d 133, 136 (Pa. 1999); <u>see also</u> <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 584 (3d Cir. 2009).

Here, the record presented to the Court at this early stage of litigation, prior to discovery, does not contain sufficient facts concerning the parties' subsequent performance to establish whether the parties' actions demonstrate an intent

to be bound by the terms of the written contract.  The Court need not decide this issue at summary judgment, however.  Resolving a summary judgment motion requires only that the Court determine whether, drawing all inferences in the light most favorable to the non-movant, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also See Am. Eagle, 584 F.3d at 581.  Applying this standard to this record, the Court finds that there remains a genuine issue of material fact concerning whether the written terms of the unsigned subcontract became binding on the parties and, consequently, whether a condition precedent to Glass Artistry's being entitled to payment is Magnum's having been paid by West Whiteland.[4]

---

[4]    Pennsylvania law recognizes two types of clauses that condition a contractor's payment to a subcontractor on the owner's payment to the contractor.  A "pay-if-paid" clause provides that a contractor has no obligation to pay the subcontractor until it is paid by the owner; a "pay-when-paid" clause only provides a timing mechanism as to when the subcontractor is to be paid.  See Sloan Co. v. Liberty Mutual Ins. Co., 2009 WL 2616715 (E.D. Pa. Aug. 25, 2009).  One practical effect of the distinction between such clauses is that, in the event an owner becomes unable to pay, a "paid-if-paid" clause will place the risk of non-payment upon the subcontractor and a "paid-when-paid" clause will place the risk upon the contractor.  Both types of clauses, however, are usually interpreted to condition final payment to the subcontractor upon the contractor's receipt of final payment from the owner, with the distinction between them being whether the subcontractor's

(continued...)

2    Genuine Issues of Material Fact Exist as to
     Whether Magnum Has Been Paid by West Whiteland for
     Glass Artistry's Work

Glass Artistry asserts in its summary judgment motion that West Whiteland has paid Magnum for all of the work performed by Glass Artistry. In support of this assertion, Glass Artistry proffers Magnum's application and certification requesting a payment of $242,654.13 for work done through May 30, 2008. The certification and application includes an itemization showing work on doors and windows that was within Glass Artistry's scope of work. Glass Artistry has also proffered a payment voucher from West Whiteland dated December 19, 2008, showing that the amount requested in Magnum's application was paid. Magnum's application and certification, however, does not identify which subcontractor performed any particular itemized task, and it is, therefore, not possible from the face of the application to determine which portions of the payment were for work done by Glass Artistry.[5]

---

[4](...continued)
ultimate recovery is limited to the amount of the owner's final payment. See id. at *4 n.2. It is not necessary for the Court to determine, at this time, whether the condition precedent in the unsigned subcontract at issue here is "pay-if-paid" or "pay-when-paid."

[5]    Glass Artistry has also proffered its own application and certification to Magnum for work done through April 31 [sic], 2008, containing an itemization of the work it performed. The descriptions in the itemization in Glass Artistry's application and certification are not the same as the descriptions in the

(continued...)

Glass Artistry has also proffered the affidavit of its counsel, Samuel Cortes, to support its assertion that Magnum has been paid by West Whiteland for Glass Artistry's work. Cortes states that Glass Artistry requested information from West Whiteland on its payments to Magnum under Pennsylvania's Right to Know Act and that the "checks and vouchers produced by the Township indicate . . . that the Township paid Magnum $9,747,406.05 for work and materials . . . which includes the work and materials supplied by Glass Artistry." Cortes Aff. at ¶ 3, Ex. E to Pl. S.J. Br. None of these checks and vouchers, however, other than the December 19, 2008, voucher mentioned above, has been made part of the summary judgment record.

Cortes' averment that Magnum has been paid for Glass Artistry's work is contradicted by the documents that Glass Artistry has made part of the summary judgment record. Magnum's payment application and certification to West Whiteland for work done through May 30, 2008, reflects that 5% of the total contract price or $513,021.37 is to be withheld as retainage. This retainage amount was not requested in Magnum's application and certification and there is no indication in the record before the Court that West Whiteland has ever paid this retainage amount to

[5](...continued)
itemization in Magnum's application and certification to West Whiteland. It is possible that Glass Artistry and Magnum are describing the same work in their respective applications, but the Court cannot make that determination on this record.

19

Magnum.  Instead, the record indicates that West Whiteland was purposefully withholding at least some of this amount.  Western has proffered an April 21, 2008, email from Magnum's project manager Rongione to Glass Artistry that states that West Whiteland has been withholding contract payments from Magnum in anticipation of liquidated damages.

Viewing these facts in the light most favorable to Western as the non-movant, there is a genuine issue of fact as to whether Magnum has been paid in full by West Whiteland for work done by Glass Artistry, and to the extent it has not been paid in full, how much of the withheld money is attributable to Glass Artistry's work.

### 3    Glass Artistry's Arguments Concerning Lack of Notice Do Not Support a Grant of Summary Judgment

Glass Artistry argues that, even if payment by West Whiteland to Magnum were a condition precedent to its getting paid under its subcontract, and even if West Whiteland had withheld some payments to Magnum because of deficiencies in its work, Glass Artistry would still be entitled to summary judgment because it did not receive adequate notice of the withholding. Glass Artistry bases this argument on Pennsylvania's Prompt Payment Act ("PPA"), 62 Pa. C.S.A. §§ 3931-3939, a subchapter of the public contracting provisions, §§ 3901-3942, of the Commonwealth Procurement Code, §§ 101-4604.

The PPA and the related public contracting provisions of the Procurement Code apply to competitively-bid contracts awarded by Pennsylvania government agencies and are intended to establish a "uniform and mandatory system governing public contracts." § 3901. Among its provisions, the PPA provides that performance by a subcontractor in accordance with the provisions of its contract entitles the subcontractor to payment. § 3933(a). Under the PPA, when a subcontractor has performed in accordance with the provisions of its subcontract, the subcontractor shall be paid by the contractor "the full or proportional amount received" for the subcontractor's work within 14 days of the contractor's receiving payment from the government agency, and if payments are delayed, the subcontractor is entitled to interest. § 3933(c),(d).

The PPA allows a government agency to withhold payment from a contractor for deficiency items, but requires that the contractor be paid for any other items which appear on its application for payment and have been satisfactorily completed. § 3934(a). The PPA similarly allows a contractor to withhold payment from any subcontractor responsible for a deficiency item, but requires that the subcontractor be paid for any item on its application for payment that has been satisfactorily completed. § 3934(b). When a government agency withholds payment for a deficiency, it "shall notify the contractor of the deficiency

item" within the time period called for in the contract or within 15 days of receiving the contractor's application of payment for that item.  When a contractor withholds payment from a subcontractor for a deficiency, it must notify both the subcontractor and the government agency of the reason for the withholding within 15 days of receiving notice of the deficiency item from the government agency.  § 3934(b).

The PPA also contains a penalty provision that states that, if a government agency, contractor, or subcontractor fails to comply with the PPA's payment terms then, in addition to other damages, a claimant may be awarded a penalty of 1% per month on any payment amount found to have been withheld in bad faith, defined as a withholding that is "arbitrary or vexatious." § 3935(a).  The same provision also provides that a finding of bad faith will entitle the opposing party to an award of reasonable attorneys' fees.  § 3935(b).

Glass Artistry contends that Magnum failed to comply with the PPA because it did not notify Glass Artistry of the fact that it was withholding payment or of its reasons for doing so within the 15-day period required by the statute.  Glass Artistry argues that Magnum's purported failure to provide timely notice of the withholding under the PPA means that Magnum has no legal right to withhold any payments under its subcontract with Glass Artistry, which in turn means that Western has no legal right to

withhold payment on its surety bond (because Western is asserting Magnum's contract defenses).

Glass Artistry's argument is misplaced for at least two reasons. First, Western has produced notices from Magnum to Glass Artistry that create a genuine issue of material fact as to whether Magnum complied with the PPA. Second, even if Glass Artistry could establish that Magnum failed to give timely notice under the PPA, Glass Artistry has failed to establish that the failure to comply with the PPA's notice requirements would bar Magnum (and Western) from withholding payments from Glass Artistry for deficient performance.

Western has produced letters and emails sent by Magnum to Glass Artistry between January 22 and April 21, 2008, identifying deficiencies in Glass Artistry's work. The letter sent March 20, 2008, makes specific complaints about Glass Artistry's failure to complete previously listed tasks, says that this has placed Magnum in a precarious position with the owner, and states that "as of this date all payments will be withheld in anticipation of pending liquidated damages." The email sent April 28, 2008, states that Magnum is not paying Glass Artistry because "the owner has not paid us for several months because of potential liquidated damages."

These communications create a genuine issue of material fact as to whether Magnum complied with the PPA. On its face,

the March 20th letter provides notice to Glass Artistry of the withholding on the date it began ("as of this date") and provides the reasons for the withholding: potential liquidated damages owed to West Whiteland, which the April 28th email says has caused West Whiteland to withhold payment from Magnum for the past "several months."

Glass Artistry disputes whether these notices create a genuine issue of fact by asserting that Western has the burden of showing that Magnum's notices complied with the PPA and that Western has failed to meet this burden because the proffered notices fail to specify, among other things, when West Whiteland withheld funds from Magnum and for what specific deficiencies within Glass Artistry's scope of work. Glass Artistry's argument misunderstands its burden on summary judgment. In a motion for summary judgment, where the movant has the burden of proof on an issue at trial, the movant has the burden of supporting its motion with credible evidence that affirmatively shows the absence of a genuine issue of material fact. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003). Here, Glass Artistry has raised the issue of whether Magnum's notices comply with the PPA; Western has not raised the issue as an affirmative defense. Glass Artistry therefore bears the burden of production on the issue at summary judgment.

Glass Artistry's argument also fails because, even if Glass Artistry established that Magnum failed to comply with the notice provisions of the PPA, this failure would not bar Magnum from withholding payment. The penalty provisions of the PPA provide a private right of action to recover penalty interest and attorneys' fees from a contractor who withholds payment in bad faith from a subcontractor. Nothing in the statute imposes any other penalty for a contractor's failure to provide the statutorily-required notice or suggests that a failure to provide notice would render the withholding invalid. The cases cited by Glass Artistry are not to the contrary because they all concern claims directly under the PPA. Glass Artistry concedes in its motion that it has not brought a PPA claim in this suit (nor could it because the PPA provides a private right of action only against a party to the underlying contract, not against a surety).

For the reasons above, because of the numerous genuine issues of fact raised by the record as it now exists, the Court will deny Glass Artistry's motion for summary judgment.


B.    Western's Motion for a Stay

Western has moved to stay this action until after Magnum and West Whiteland resolve their own pending dispute over payment for the construction of the West Whiteland Township

Municipal Building.  Western contends that, because the
subcontract allegedly contains a term making West Whiteland's
payment to Magnum a condition precedent for Magnum's payment to
Glass Artistry, the amount that West Whiteland owes to Magnum for
Glass Artistry's work (or the amount that Magnum owes West
Whiteland in liquidated damages for alleged deficiencies in that
work) will have to be determined before Glass Artistry can
recover.  Glass Artistry counters by arguing that its right to
recover under its subcontract is not dependent on Magnum's
recovery from West Whiteland and that no stay is warranted.

Western has stated (and Glass Artistry has not
disputed) that West Whiteland and Magnum are currently in
mediation, as required under their contract.  The contract
provides that, if mediation is unsuccessful, the parties may
bring suit in the Court of Common Pleas of Chester County.
Magnum has already filed a writ and summons in that court against
West Whiteland, but has not yet filed a complaint awaiting the
results of mediation.

In their dispute, West Whiteland contends that Magnum
owes it liquidated damages under its contract for late completion
of the project and defective work.  Magnum is disputing its
termination by West Whiteland and the assessment of damages.
Some of the defects alleged by West Whiteland concern water
infiltration issues that implicate Glass Artistry's work on the

building's doors and windows.  As part of the mediation process,
West Whiteland has engaged a water infiltration expert to conduct
tests on the building, and Glass Artistry has, at West
Whiteland's invitation, observed this testing.  Neither Western
nor Glass Artistry, however, is a formal party to the on-going
mediation efforts between Magnum and West Whiteland.

The power to temporarily stay proceedings is
"incidental to the power inherent in every court to control the
disposition of the causes on its docket with economy of time and
effort for itself, for counsel, and for litigants. How this can
best be done calls for the exercise of judgment, which must weigh
competing interests and maintain an even balance."  Landis v.
North American Co., 299 U.S. 248, 254 (1936).

Exercising this discretion, the Court will stay this
action pending the resolution of the dispute between West
Whiteland and Magnum.  The Court believes that determining the
amounts owed by West Whiteland to Magnum (or vice versa) is a
necessary predicate to determining whether (and to what extent)
Glass Artistry can recover from Western in this suit.

Although not deciding the issue at this time, the Court
believes it is likely that Glass Artistry's entitlement to
payment under its subcontract will be dependent on Magnum's being
paid by West Whiteland for Glass Artistry's work.  If Western
prevails in establishing that the terms of the unsigned written

subcontract were ratified by subsequent conduct, then West Whiteland's payment will be a condition precedent for Glass Artistry's payment. Such an express condition precedent would represent Glass Artistry's agreement to limit its right to recovery until after the resolution of any dispute between Magnum and West Whiteland and would warrant a stay of these proceedings. See Sloan & Co. v. Liberty Mutual Ins. Co., 2008 WL 3832519 (E.D. Pa. Aug. 15, 2008) (staying a subcontractor's claims against a contractor's surety until the resolution of a state court suit between the contractor and the owner, on the ground that the subcontract made the owner's payment to the contractor a condition precedent to the contractor's payment to the subcontractor).

Even if Western does not ultimately prevail in establishing the existence of an express condition precedent, the amount paid by West Whiteland may still be relevant to Glass Artistry's ability to recover. In its briefing, Glass Artistry has looked to the PPA to flesh out the parties' duties under the terms of the oral subcontract it alleges between it and Magnum. Under the PPA, a subcontractor whose performance is satisfactory is to be paid "the full or proportional amount received" by the contractor for the subcontractor's work. 62 Pa. C.S.A. § 3933(c). This language would seem to suggest that, if Magnum received less than full payment from West Whiteland for Glass

Artistry's work, then the PPA would require that only a proportional amount, not the full payment, be made to Glass Artistry.

Because neither Western nor Glass Artistry is a party to the mediation between Magnum and West Whiteland, it is not clear whether or to what extent either Western or Glass Artistry will be bound by any findings in that mediation or possible subsequent state action. The Court makes no finding or prediction in that regard. In staying the action, the Court assumes only that the resolution of the dispute between West Whiteland and Magnum will determine the amount owed between those two parties under their contract. Once that amount is determined, the Court anticipates that this litigation can proceed to determine, among other issues, whether and to what extent any amount properly withheld by West Whiteland from Magnum (if any) may limit the amount that Glass Artistry may recover.

In reaching its decision to stay the litigation, the Court has considered, among other factors, the competing interests of avoiding wasted and duplicative effort and avoiding unnecessary delay. On the record before it, the Court believes that the balance of these interests favors a stay. It is possible, however, that future events, particularly the course and scope of the proceedings between Magnum and West Whiteland, may affect this balance. The Court will therefore order counsel

to report in six months as to the status of Magnum and West Whiteland's dispute resolution process.  In addition, should either party become aware of new facts that it believes warrant a modification or dissolution of the stay, that party may petition the Court for that relief.

An appropriate Order will be issued separately.